E. A. GOINS v. RONALD McLOUD, LOU CHANDLER AND HUSBAND, CEPH CHANDLER, AND SARA DYSON.

(Filed 29 March, 1950.)

**1. Deeds § 2a (2)—**

The burden of proving mental incapacity is upon the party attacking the validity of the deed on this ground.

**2. Same: Evidence § 32—**

A party interested in the event may testify as to transactions with a decedent when such testimony relates solely to the issue of mental capacity. G.S. 8-51.

**3. Deeds § 2a (2)—**

Upon attack of a deed of bargain and sale on the ground of mental incapacity, interrogation of witnesses as to their opinion whether grantor knew the nature and extent of his property and the natural objects of his bounty and realized the full force and effect of his disposing of his property by deed, must be held for prejudicial error, the test of mental capacity to execute a deed being the ability to know and understand the nature, scope and effect of his act in executing same.

**4. Appeal and Error § 39b—**

Prejudicial error in the trial of the issue of mental capacity entitles appellant to a new trial notwithstanding the affirmative finding of the jury upon the issue of fraud and undue influence when the mental condition of grantor is an eminent factor affecting the answer to the issue of fraud and undue influence.

PLAINTIFF's appeal from *Bennett, Special Judge,* October Term, 1949, CALDWELL Superior Court.

*W. H. Strickland for plaintiff, appellant.*
*Max C. Wilson for defendants, appellees.*

SEAWELL, J.   The plaintiff sued in ejectment to recover possession of certain lands, which he claims in fee, alleging that the defendants were in wrongful possession thereof and committing various acts of trespass to his great damage.

Defendants, separately answering, denied plaintiff's title; and defendants Dyson and Chandler, both heirs at law of S. M. McLoud, from

whom plaintiff derives title, attack the validity of the deed to plaintiff, alleging that the grantor McLoud was mentally incompetent to make it, and that it was obtained by fraud and undue influence practiced by plaintiff on the grantor, taking advantage of his extreme age, weakness and feebleness of mind.

The following issues were submitted to the jury and answered as indicated:

"1. Did S. M. McLoud on September 25, 1939, have sufficient mental capacity to execute the deed in question?

"Answer: No.

"2. Was the execution of the said deed procured by fraud or undue influence on the part of the plaintiff?

"Answer: Yes.

"3. What, if any, was the consideration for the deed from S. M. McLoud to the plaintiff?

"Answer: $200.00."

Plaintiff in apt time moved to set aside the verdict for errors committed during the trial, the motion was declined, and plaintiff excepted. Judgment upon the issues was entered declaring the plaintiff's deed void, adjudging title to be in the defendants, with other provisions not necessary to mention.

The plaintiff objected, excepted and appealed.

While there are other exceptions taken during the trial that appeal to us as meritorious, only those within the rationale of the decision are here discussed.

Whether S. M. McLoud had mental capacity to make the deed on which plaintiff relied became of first importance to the determination of this controversy. On this question the burden was upon the defendants who attacked the deed. In evidence admitted over plaintiff's objection the defendants sought to establish the want of mental capacity in two ways. First, by showing by those who had observed him in ordinary ways of life, incidents, conduct, and conversation, claimed to be so erratic and abnormal as to indicate irrationality of varying degree; acts which indicated he was not *en rapport* with his surroundings; wanting in awareness, perception and reason. Incidents of that nature were put in evidence, over objection, by testimony of interested parties—amongst them by the two defendants, children and heirs at law of McLoud. Plaintiff objected to the testimony because of its supposed infraction of G.S. 8-51 which excludes certain interested witnesses from testifying to personal transactions had with persons since deceased,—popularly known as the "dead

man's statute"—the compass of which has never yet been satisfactorily or ultimately defined.

It is sufficient here to say that the testimony relating to the conduct of McLoud, if the incidents mentioned could be defined as transactions, is used only as a basis for the inference that he was wanting in mental capacity of the kind necessary to make a deed, and as used here is not offensive to the statute.

Second, the defendants sought to establish want of mental capacity by opinion evidence, all of it non-expert; and addressed to nearly all the witnesses a formula of frequent use in will cases, and which plaintiff contended contained implications not applicable to deeds. "Q. . . . do you have an opinion satisfactory to yourself as to whether or not on September 25, 1939, he had sufficient mental capacity to know the nature and extent of his property, and to know who were the natural objects of his bounty, and to realize the full force and effect of disposing of his property by deed?"

The question in this form was put to each of the defendants Dyson and Chandler, and to defendants' witnesses Lonnie Harrison, F. H. Hoover, Tom Moser, Nannie Goins, Mrs. Ronald McLoud; its frequency and the fact that it crowns the examination of each witness, it is contended, augments the effect of the error, if error it was.

Among other objections to the form and substance of the question, appellant points out that the deed was one of bargain and sale and not a deed of gift, and in the making had nothing to do with the persons naturally to be considered as the recipients of the grantor's bounty, or any precise understanding of the effect of the disposition he was making of the property with respect to such persons, but only to understand the nature and effect of his act.

We are inclined to agree that the question commonly used to test the mental capacity to make a will is in form and substance improper as a test of mental capacity to make a deed. Even if the degree of mentality required may be the same, and it is not necessary to pass on that, the test should be strictly applicable to the circumstances in which the grantor is placed, and these are quite different from the testator making a will.

Although the propriety of the formula in will cases is frequently questioned, it is uniformly accepted in this State as the test of mental capacity to make a will. Its validity, however, rests more upon convention and long acceptance than in logic, especially when addressed to persons non-expert either in psychiatry or law. However well established for a test for mental capacity to make a will, we have no authority in this State for expanding it or extending it to mental capacity to make a deed, and are constrained to hold its admission for that purpose as prejudicial error.

It is said in *Sprinkle v. Wellborn,* 140 N.C. 163, (loc. cit. 181) 52 S.E. 666:

> "We have said in *Cameron v. Power Co.,* 138 N.C. 365, which sustains the charge of the court, that this Court has adopted Coke's definition, that a person has mental capacity sufficient to contract if he knows what he is about (*Moffit v. Witherspoon,* 32 N.C. 185; *Paine v. Roberts,* 82 N.C. 451), and that the measure of capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly, nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly. There is no particular formula to be used in such cases, as said by the Court in *Morris v. Osborne, supra* (104 N.C. 609), but the law in this respect should be explained to the jury with reference to the special and peculiar facts of the case being tried, and under the guidance of such general principles as have been settled and declared by the courts."

On the second issue the jury found that the deed was procured through fraud and undue influence. Standing alone, this might have justified a judgment vacating and canceling the deed. But the question of undue influence and fraud is, in both the complaint and evidence, so tied up with the mental condition of the grantor, McLoud, as to make that, perhaps, the strongest factor leading to the answer to the second issue. Indeed, without it the evidence of fraud and undue influence is, perhaps, too tenuous for consideration. *Allore v. Jewel,* 94 U.S. 506, 24 L. Ed. 260; *Wessell v. Rathjohn,* 89 N.C. 377; *Sprinkle v. Wellborn, supra.*

For the errors noted and the reasons herein assigned, the plaintiff is entitled to a new trial. It is so ordered.

Error. New trial.