### WARREN J. REDD v. MECKLENBURG NURSERIES, INC.

(Filed 14 January, 1955.)

**1. Trial § 23a—**

Where the evidence is conflicting upon the determinative issue, nonsuit is properly denied.

**2. Appeal and Error § 39e—**

Where it is stipulated that if the jury should find that the contract alleged existed between the parties, plaintiff would be entitled to recover a stipulated sum, whether an officer of defendant considered the amount theretofore paid plaintiff full compensation for his services, is immaterial, and exclusion of testimony of the officer to this effect cannot be prejudicial.

**3. Appeal and Error § 22—**

The Supreme Court is bound by the record.

**4. Appeal and Error § 39e—**

The exclusion of testimony cannot be prejudicial when the same evidence is thereafter brought out from the same witness on cross-examination.

**5. Trial § 31d—**

Where the court fully and correctly charges upon the burden of proof, an excerpt from the portion of the charge defining greater weight of the evidence as "evidence that has a greater weight upon your minds than the evidence of defendant" will not be held prejudicial, certainly when the court thereafter instructs the jury that if the evidence of the plaintiff and defendant have equal weight in their minds to answer the issue in the negative, the burden of proof being on plaintiff.

**6. Trial § 32—**

A party desiring greater elaboration in the charge on a particular point must appropriately tender a request therefor.

**7. Appeal and Error § 39b—**

Where, upon the stipulations of the parties, their rights are dependent upon the answer to the first issue, any error in the charge relating to a subsequent issue, which is mere surplusage, cannot be prejudicial.

13—241

APPEAL by defendant from *Whitmire, S. J.,* 12 April, 1954 Extra Civil Term, MECKLENBURG.

Plaintiff sued for commissions he alleged were due him by reason of his having procured from Marsh Realty Company a contract for shrubbery and landscaping. He alleged the defendant agreed to pay him 25 per cent of the contract price as compensation for his services in securing the contract and supervising the work; that he procured the contract for which the defendant was paid $12,300.00; that he supervised the job until he was discharged by the defendant; that he was due as commissions the sum of $3,075.00, upon which $300.00 had been paid.

The defendant admitted the plaintiff was employed, but contended his duties consisted of "obtaining small contracts for planting, lawn work, and the sale of shrubbery, and in supervising the work on such orders as he obtained. It is specifically denied that the plaintiff was authorized to solicit the contract described in the complaint."

Plaintiff testified he had a contract with the defendant; that he was to be paid 25 per cent of the contract price for shrubbery and landscaping on orders obtained by him. It was a part of his duty to supervise the job; that he went over the grounds with Mr. Broadway, of Marsh Realty Co., when "he called me to come and pick up the plans and give him a figure on the landscaping and shrubbery work, which I did . . . the figure we made him was $12,500.00, and he told us we could have the contract for $12,300.00. Mr. W. C. Daniels (president of the defendant) approved this contract before it was made." The plaintiff further testified he supervised the work until his discharge by the defendant and that he was paid $300.00, leaving a balance due on his contract of $2,775.00. Testimony tending in part to corroborate the plaintiff was offered.

Mr. W. C. Daniels, president of the defendant, testified in substance: The defendant employed the plaintiff in 1946 as general superintendent of the nursery on a salary, and about September, 1947, changed him to a commission basis. He was paid 33⅓ per cent on plants sold at retail prices. On lawn work without shrubbery, he was paid 20 per cent, and on combination orders, 27 per cent. He was never paid any other commission except 10 per cent for supervising. He was only paid 10 per cent on the Oak Crest job, which was comparable to the Marsh job, "because we did not permit him or any other salesman to make bids on any work of this kind where plans were made by landscape architects and put out for bids. We figured 20 per cent profit and if we bid higher it is practically impossible to get the larger jobs." . . . "We discharged Mr. Redd because we did not think it was a good idea to have a man in our employ who was trying to hire our key men." Mr. Redd was paid $300.00 which was a liberal estimate of 10 per cent commission on the work done up to the time he was discharged. Mr. Redd did not procure the contract for

Marsh Realty Company job. There was other testimony tending in part to corroborate Mr. Daniels.

The parties entered into the following stipulation: "It is stipulated and agreed by plaintiff and defendant that: First, that the defendant is a corporation engaged in the nursery and landscaping business. Second, that on August 15, 1950 the plaintiff was in the general employment of the defendant. Third, that on or about August 15, 1950 a contract was entered into by and between Mecklenburg Nurseries, Inc., and the Marsh Realty Company, acting as agent for Weyland Homes, Inc. Fourth, that the agreed contract price of said contract was $12,300. Fifth, that during the month of March, 1951 the defendant paid to the plaintiff the sum of $300.00.

"It is further stipulated and agreed that if the jury answer the first issue in favor of the plaintiff, then the plaintiff would be entitled to judgment in the sum of $2,775.00, with interest and costs, but if the jury answer the issue in favor of the defendant, then the plaintiff shall take nothing of the defendant and the plaintiff will be taxed with the costs."

Motion was made for nonsuit at the close of the plaintiff's evidence and renewed at the close of all the evidence. To the refusal of the court to sustain the motion, the defendant excepted. The court submitted the following issues, which the jury answered as indicated:

"1. Did the plaintiff and the defendant contract and agree that on all contracts solicited and procured by the plaintiff for the defendant, the plaintiff was to receive a commission of 25 per cent? Answer: Yes.

"2. Did the plaintiff solicit and procure the contract between defendant and Marsh Realty Company? Answer: Yes."

From judgment on the verdict, the defendant appealed.

*B. Irvin Boyle and Robert D. Potter for plaintiff, appellee.*
*Orr & Osborne, by Frank W. Orr, for defendant, appellant.*

HIGGINS, J. On the issues submitted to the jury, the evidence was in conflict and, therefore, presented a jury question. *Pascal v. Transit Co.,* 229 N.C. 435, 50 S.E. 2d 534; *Powell v. Lloyd,* 234 N.C. 481, 67 S.E. 2d 664. The motion for nonsuit at the close of all the evidence was properly overruled. For the same reason, the formal exceptions to the refusal to set aside the verdict and to the signing of the judgment were also properly overruled. The other assignments of error relate to the admissibility of evidence and to the charge of the court.

The witness W. C. Daniels, president of the defendant, on direct examination was asked this question: "Well state whether or not, Mr. Daniels, you considered the check for $300.00 to Mr. W. J. Redd as full payment for his work on the Weyland Homes job." Plaintiff's objection was sus-

tained. If permitted to answer, the witness would have said, "I did." Refusal of the court to permit the question and answer constitute the defendant's Assignments of Error Nos. 2 and 3.

It was stipulated by the parties that if the jury answered the first issue, "Yes," that is, that the parties had a contract for 25 per cent as claimed by the plaintiff, the court should render judgment for $2,775.00. It was immaterial, therefore, whether Mr. Daniels considered $300.00 in full payment for plaintiff's work. According to the stipulation, the plaintiff was entitled to recover $2,775.00 if the jury found he had the contract claimed, otherwise he could recover nothing. Assignments of Error Nos. 2 and 3 cannot be sustained. ·

The defendant's witness, Harold Daniels, was asked this question : "Do you know the rule of the company with reference to salesmen making bids on jobs put out on bids by architect's plans ?" Answer : "Yes, sir." "What is the rule of the company ?" The objection to the question was sustained. The record does not contain the answer witness would have made to the question had he been permitted to answer. The further question was asked : "Does the rule apply to all of the salesmen ?" Objection to the question was sustained, but the witness' answer appears to have been, "Yes, sir." Whether excluded or not, the record does not disclose. Then the following appears as the further testimony of the witness : "The contract arrangement with Mr. Redd and the Mecklenburg Nurseries was the same as my contract with the company. On straight shrubbery sales, retail prices, they were 33⅓ per cent. On combination jobs, 27 per cent. On straight lawn jobs they were 20 per cent. And on two instances Mr. Redd was paid 10 per cent for supervising on the Weyland Homes job (the one in question) and the Oak Crest project." There is nothing in the record to indicate the statement was made in the absence of the jury. However, the defendant, in its brief, treats the statement as having been excluded. We are bound by the record. However, even though the evidence had been excluded, the exclusion would not be reversible error because the same evidence was brought out from the same witness on cross-examination, so that the defendant had the full benefit of it. Error in the exclusion of testimony, therefore, does not appear.

Two exceptive assignments of error are made to the charge : The first lifts out of context that part of the charge as follows : "Now, by the greater weight of the evidence the law simply means that by evidence that has a greater weight upon your minds than the evidence of the defendant." Immediately preceding, the court had charged fully and correctly upon the burden of proof, and immediately after charging as above, further charged : "If the evidence of the plaintiff and the defendant have equal weight in your minds, then your decision would have to be in the negative, or for the defendant, since the burden of proof is on the plain-

tiff." It does not appear that the jury was, or could have been misled, or could have misunderstood the charge. If the defendant desired a more complete definition of greater weight of the evidence, it should have made the request by appropriate prayer. *Wilson v. Casualty Co.,* 210 N.C. 585, 188 S.E. 102. The charge as given seems to be in substantial accord with *Hodges v. R. R.,* 122 N.C. 992, 29 S.E. 939; *Supply Co. v. Conoly,* 204 N.C. 677, 169 S.E. 415; *Arnold v. Trust Co.,* 218 N.C. 433, 11 S.E. 2d 307.

The defendant assigns as error four paragraphs of the court's charge relating to the second issue: "Did the plaintiff solicit and procure the contract between defendant and Marsh Realty Company?" In view of the stipulation, it does not appear necessary to decide whether the exception is broadside or whether the charge contains a correct statement of the law. Under the terms of the stipulation, the second issue is immaterial and need not have been submitted. It may be treated as surplusage. The stipulation contains the following: "It is further stipulated and agreed that if the jury answer the first issue in favor of the plaintiff, then the plaintiff would be entitled to a judgment in the sum of $2,775.00, with interest and costs, but if the jury answer the issue in favor of the defendant, then the plaintiff shall take nothing of the defendant and the plaintiff will be taxed with the costs."

Under the stipulation, the case was decided by the first issue which the jury found for the plaintiff upon competent evidence and under a charge free from prejudicial error. After the jury answered the first issue in favor of the plaintiff, it was the duty of the court, under the stipulation, to render judgment for the plaintiff.

No error.