IN THE MATTER OF THE WILL OF FREDERICK GEER TATUM, DECEASED.

(Filed 7 June, 1951.)

**1. Evidence § 21—**

> The fact that an answer is not responsive to the question does not in itself render the answer incompetent and justify the withdrawal of the testimony from the jury, but to the contrary if the answer contains relevant and pertinent testimony it is nonetheless competent because the matter contained therein was not specifically asked for.

**2. Wills § 23b—**

A nonexpert witness who has shown that he has had opportunity to form a reasonably reliable appraisal of the mental powers of testator, while he may not testify as to whether testator had sufficient mental capacity to make a will, may give his opinion as to whether testator had sufficient mental capacity to know the nature of his property, the natural objects of his bounty, and the nature and effect of a testamentary disposition of his property, and he may also state facts observed about the conduct of testator upon which the opinion is based.

**3. Same—**

In response to a question as to whether the witness had an opinion satisfactory to herself as to whether testator possessed sufficient mental capacity to know what property he had, who his relatives were and what claims they had upon him, and whether he understood the nature and effect of the disposition of his property by will, the witness narrated facts relevant to the inquiry concerning testator's conduct as she had observed it. *Held:* It is error to strike out the answer as not responsive to the question, since observed facts constituting a basis for an opinion as to the mental capacity are competent. Often the better practice would be for counsel to limit the scope of each question and move through the zone of opinion-inquiry step by step.

**4. Wills § 21b—**

Mental capacity to make a will is not a question of fact but is a conclusion of law to be drawn from the essential factual elements as to his capacity to know what property he has, the natural objects of his bounty and his understanding of the nature and effect of the testamentary disposition of his property, each of which is essential to support the conclusion.

**5. Wills § 25—**

A charge to the effect that named witnesses had testified that in their opinion testator did not have mental capacity to make a will must be held for reversible error as expressing an opinion in evaluating the opinion testimony. G.S. 1-180.

**6. Wills § 30: Executors and Administrators § 1—**

An executor is charged with the preservation of the estate pending final determination of the issue of *devisavit vel non* in favor of caveator upon appeal, unless and until he be removed, G.S. 28-32, and therefore upon the answer of the issue in favor of caveators it is error for the court to appoint commissioners with direction that they give bond and handle the estate.

APPEAL by propounders from *Hatch, Special Judge,* and a jury, at January Civil Term, 1951, of DURHAM. New trial.

Issue of *devisavit vel non* decided in favor of caveator on the question of testamentary capacity of the testator, Frederick Geer Tatum.

From judgment upon the verdict setting the will aside, the propounders appealed, assigning errors.

*Egbert L. Haywood for propounders, appellants.*

*Victor S. Bryant, Robert I. Lipton, Ralph N. Strayhorn, Victor S. Bryant, Jr., and Fuller, Reade, Umstead & Fuller for caveator, appellees.*

JOHNSON, J. The testator was an inmate of Watts Hospital in the City of Durham from 23 January, 1950, until his death on 2 March, 1950. The will was executed in the hospital on 17 February, 1950. Mrs. I. J. Newton, a registered nurse who was on duty at the hospital during the testator's last illness, was called as a witness by the propounders. She testified that the testator was a patient on Ward K, to which she was assigned during the period he was a patient at the hospital, and that she administered to him and saw and talked to him from time to time. The following examination then ensued:

"Q. Mrs. Newton, based upon your conversations and your observations, do you have an opinion satisfactory to yourself as to whether Mr. Tatum possessed on February 17, 1950, sufficient mental capacity to know what property he had, who his relatives were, what claims they had upon him and whether he was capable of disposing of his property by will and of understanding the consequences and effect of so doing: do you have such an opinion?

"A. I do have such an opinion.

"Q. What is your opinion, Mrs. Newton?

"A. Well, in my opinion February 17th was not any different date to him than any other day that he was in the hospital. I observed by his conversations that I had with him frequently that he knew what he was doing; he read the newspapers, he was a very witty person and the jolliest person on the ward, and when anybody told him a joke it just did everybody good to hear him laugh.

"Motion to strike on the grounds it is not responsive. Motion allowed.

"COURT: You will not consider the answer, gentlemen of the jury."

"Exception."

"Q. I will ask you: do you have an opinion satisfactory to yourself as to whether Mr. Tatum possessed on February 17, 1950, based upon your conversations and your observations, sufficient mental capacity to know what property he had, who his relatives were, what claims they had upon him, and whether he was capable of disposing of his property by will and of understanding the consequences and effect of so doing; do you have such an opinion.

"A. I do.

"Q. What is it: Just state your opinion and you can show your basis and make your explanation. State your opinion, if you will, please.

"A. In my opinion, I feel that he knew what he was doing, as he always did. There is not a doubt in my mind that he didn't know what he was doing.

"Motion to strike as not being responsive.

"Motion allowed.

"Exception."

Counsel for the propounders pursued the examination through several further questions. It produced nothing of substance for the record. The witness was then excused.

There was no objection to the form of the foregoing questions. The caveator's challenges were directed solely to the answers of the witness. The caveator moved to strike the answers on the ground they were not responsive to the questions. The propounders insist that the court erred in allowing the motions, and that this is so, even though it be conceded that the answers were not responsive to the questions.

Propounders' position appears to be well taken. Whether the answers were responsive to the questions is not controlling. The determinative question before the court below was whether the answers were relevant and competent as bearing upon the issue of mental capacity of the testator. If the answers furnished relevant facts, they were nonetheless admissible merely because they were not specifically asked for. Silence may not be imposed to eliminate relevant, pertinent testimony simply because it is not specifically requested. This rule is rooted in the fundamental tenets of natural justice and is supported by common sense. Its universal application can do no harm, for if an unresponsive answer produces irrelevant facts, they may be stricken out and withdrawn from the jury. See *Huffman v. Lumber Co.,* 169 N.C. 259, 85 S.E. 148; *Hodges v. Wilson,* 165 N.C. 323, 81 S.E. 340. See also Wigmore on Evidence, Third Edition, Vol. III, Sec. 785, p. 160, where it is said: "Courts ought to cease repeating the novel and unwholesome assertion that 'where an answer is not responsive to the question put, it is the duty of the Court to strike it out, on motion.' . . . This topic of responsiveness has somehow become in modern times beset with crude misunderstandings, that tend to suppress truth and turn the inquiry into a logomachy:" . . .

It is elementary that in the trial of a case involving the issue of testamentary capacity, a lay witness, who qualifies by showing he has had opportunity to form a reasonably reliable appraisal of the mental powers of the testator, may give an opinion or opinions as to the testator's measure of mental capacity to deal with certain given factual situations. And while a witness who gives an opinion as to testamentary capacity may also state observed facts about the conduct of the testator on which the opinion is based, it is not necessary that this be done. "All that needs to appear

in advance is that he had an opportunity to observe and did observe, whereupon it is proper for him to state his conclusions, leaving the detailed grounds to be drawn out on cross-examination." Wigmore on Evidence, Third Edition, Vol. VII, Sec. 1922, p. 20 (citing and commending opinion by *Stacy, J.* (now *C. J.*) in *S. v. Hightower,* 187 N.C. 300, 121 S.E. 616). See also Wigmore on Evidence, Third Edition, Vol. VII, Sec. 1935, p. 35.

It is established by our decisions that in the trial of a will case a qualified witness may express an opinion or opinions that the testator did or did not have sufficient mental capacity to know (1) the nature and extent of his property; (2) who were the natural objects of his bounty, that is, those persons who would or should or might be expected to take his property in the absence of a will (Words and Phrases, Permanent Edition, Vol. 28, p. 49); and (3) what he was doing, and to whom he wished to give his property and how, that is, the force and effect of his act in making a will, thereby disposing of his property. *In re Will of York,* 231 N.C. 70, 55 S.E. 2d 791; *Clary v. Clary,* 24 N.C. 78. And in the examination of a lay witness, it is not necessary, as intimated by the court below, for counsel to compress into a single question several elements of approved factual tests of testamentary capacity or lack of it. Nor is it required that a witness include all elements in the response. No sound reason is perceived why a witness may not express an opinion that embraces only part of the approved factual elements of the presence or absence of testamentary capacity. Frequently,—as possibly in the instant case,—a witness may feel only partially qualified to express an opinion as to the several tests included in an all-embracing question. Besides, when a lack of testamentary capacity is sought to be shown, it may suffice to establish the absence of only one of the essential factual elements. And, too, in deference to the mental processes of some witnesses, it is frequently not amiss for examining counsel to limit the scope of each question, and move through the zone of opinion-inquiry step by step, rather than in one leap.

And, of course, a nonexpert witness who appears to be qualified to give an opinion, nevertheless may refrain from doing so, and elect instead to relate the facts observed by him, and describe as best he can the acts, conduct, and demeanor of the person under investigation. Indeed, prior to the notable decision of this Court (delivered by *Gaston, J.*) in *Clary v. Clary, supra* (24 N.C. 78), it seems that under the rule which prevailed generally in the United States at that time, a lay witness was permitted to relate only observed facts, and never allowed to give an opinion based thereon. Wigmore on Evidence, Third Edition, Vol. III, Sec. 1933, p. 31 *et seq.*

In the instant case, the questions propounded to Mrs. Newton invited her to express an abstract opinion as to the mental capacity of the testator, based upon her observations of his conduct in the hospital. She chose to be more concrete. She eschewed the opinion, in part at least, and narrated facts about the testator's conduct as she observed them. Instead of conforming herself entirely to the abstract opinion called for, she elected to follow in part the more direct course of relating the facts as perceived by her,—the observed facts behind the opinion sought. Her answers as given are sanctioned by well considered authorities on the subject. *In re Will of York, supra* (231 N.C. 70) ; *In re Will of Stocks,* 175 N.C. 224, 95 S.E. 360; *In re Broach's Will,* 172 N.C. 520, 90 S.E. 681; *In re Rawlings' Will,* 170 N.C. 58, 86 S.E. 794, and cases there cited; *Smith v. Smith,* 117 N.C. 326, 23 S.E. 270; *Clary v. Clary, supra* (24 N.C. 78). See also Wigmore on Evidence, Third Edition, Vol. VII, Sections 1917 through 1938.

Another group of exceptions brought forward by the propounders relate to the charge. The court in summarizing the testimony of caveator's witnesses, compressed it into packaged opinions in this fashion: The first witness . . . Mr. O'Briant . . . testified that in his opinion Frederidk Geer Tatum did not have the mental capacity to make a will. . . ." "Mr. Conrad testified . . . that in his opinion Frederick Geer Tatum did not have the mental capacity to make a will. . . ." Then, right on through the testimony of nineteen other witnesses for the caveator, the court continued to so summarize the testimony of the various witnesses.

It is well established that a nonexpert witness may not be permitted to make the abstract statement that a testator "did not have the mental capacity to make a will." This is so for the reason that mental capacity to make a will is not a question of fact. "It is a conclusion which the law draws from certain facts as a premise." *In re Will of Lomax,* 224 N.C. 459, p. 462, 31 S.E. 2d 369; *In re Will of York, supra* (231 N.C. 70). See also Wigmore on Evidence, Third Edition, Vol. VII, Sec. 1958, p. 89.

The bulk of caveator's evidence was offered in substantial compliance with the foregoing rule. Counsel in eliciting the testimony appear to have observed the rule with meticulous care. The witnesses seldom deviated therefrom, and when they did so, their answers were rarely called in question. The few departures are inconsequential. Some twenty-one witnesses, in response to questions, the form of which has been sanctioned by this Court, stated in substance that in their opinions the testator on 17 February, 1950, did not have sufficient mental capacity to know the nature and extent of his property, to know who were the natural objects of his bounty, or to realize the full force and effect of the disposition of his property by will. *In re Will of York, supra* (231 N.C. 70).

Accordingly, the court, in telling the jury that these twenty-one witnesses testified that the testator in their opinions "did not have the mental capacity to make a will," inadvertently violated the very rule which the witnesses generally were required to observe in giving their opinions.

The record also indicates that while the testimony of these witnesses embraced in most instances an approved long-form opinion-answer, bearing on the alleged mental incapacity of the testator (*In re Will of York, supra* (231 N.C. 70)), it also included facts related by the witnesses bearing upon their observations of the conduct and demeanor of the testator. Also, the testimony of a number of the caveator's witnesses on cross-examination reveals that in some instances they did not fully understand or comprehend all elements of the long-form opinion-question answered favorably to the caveator on direct examination.   One witness, when interrogated as to the meaning of "objects of Mr. Tatum's bounty," said: "Well, I should think it would be the worth of his property and the value of his property" . . . Another witness said he thought it related to "what he (Mr. Tatum) knew about taking care of his stuff and making stuff by bounty,—taking care of his property."

This method of compressing the component parts of the testimony of the caveator's witnesses into summary opinions no doubt was intended to shorten and simplify the charge.   However, we are fearful that it led to an erroneous appraisal and evaluation of the opinion-testimony.   We think it expressive of an opinion in violation of G.S. 1-180.   It may not be approved, and this is so notwithstanding the court explained the formula to the jury in advance, and also used it in reviewing the evidence offered by propounders.

It appears that contemporaneously with the entry of the judgment below on 3 February, 1951, the court entered an order allowing attorney fees and appointing commissioners, with direction that they give bond and take over and handle the estate pending final determination of the cause.   The propounders excepted to the portion of the order which appoints the commissioners and directs them to give bond.   The exception appears to be well taken.   It is sustained.   Under the provisions of G.S. 31-36, the executor is charged with the preservation of the estate pending final determination of the issue raised by the caveat, unless and until he be removed.   G.S. 28-32.   *Edwards v. McLawhorn,* 218 N.C. 543, 11 S.E. 2d 562; *Elledge v. Hawkins,* 208 N.C. 757, 182 S.E. 468; *In re Palmer's Will,* 117 N.C. 133, 23 S.E. 104.   Therefore, the portions of the order to which the exception relates will be stricken out.

Since the questions presented by the other exceptive assignments of error may not arise upon the retrial, we refrain from reviewing them.

New trial.